RODERICK FORD,

          Appellant,

v.                                Case No:  8:18-cv-2053-T-02

JOHN M. WAAGE and FLORIDA
DEPARTMENT OF REVENUE,

          Appellees.

_____

## ORDER

This matter comes before the Court on Appellant Roderick Ford's[1] appeal

(Dkt. 1[2]) of two bankruptcy court rulings, one entered on March 30, 2017 (Dkt. 12-

5)[3] (the "March 30 Order") and one entered on July 19, 2018 (Dkt. 12-2) (the "July

19 Order).[4]  Mr. Ford filed an amended memorandum in support of his appeal.

Dkt. 18.  Appellee, the Florida Department of Revenue (the "DOR"), filed a

response in opposition to the appeal (Dkt. 25), and Mr. Ford filed a reply

---

[1] Mr. Ford has proceeded pro se before this Court and in the bankruptcy court. Nonetheless, he represents to the Court that he is "a member of the Florida Bar (including the U.S. District Court for the Middle District of Florida) [and] has also practiced in the area of federal bankruptcy law for over fifteen years."  Dkt. 18 at 7 n.2.

[2] The docket in this case will be cited as "Dkt."  The docket in Mr. Ford's underlying bankruptcy action, *In re Ford*, No. 8:16-cv-bk-07504-RCT (Bankr. M.D. Fla.), will be cited as "Bk. Dkt."

[3] The March 30 Order was signed on March 27, 2017 but entered on March 30, 2017. Dkt. 27-1 at 13.

[4] The Court discusses this point further, *infra*.

memorandum (Dkt. 26).[5]   The Court then ordered Mr. Ford to show cause why his

appeal of the March 30 Order should not be dismissed for lack of subject matter

jurisdiction.  Dkt. 28.  Mr. Ford filed a response to the Order to Show Cause (Dkt.

31), and the DOR filed a reply to that response (Dkt. 32).  On consideration, the

Court concludes that Mr. Ford's appeal of the March 30 Order is untimely and due

to be dismissed for lack of subject matter jurisdiction.  It also affirms the

bankruptcy court's decision as to the July 19 Order.

## I.    BACKGROUND

### A.    State Family Court Proceedings

The issues currently before the Court have their genesis in state family court

proceedings.  In 2011, the DOR instituted a child support proceeding in state court

on behalf of Mr. Ford's now-former wife.  *See* Dkt. 27-7.  Mr. Ford was named as

the respondent in the action.  *Id.*  A temporary order of support was entered,

finding a need for support for Mr. Ford's two minor children.  *Id.* at 3.  Mr. Ford

was ordered to pay child support of $300 per month beginning on January 1, 2012.

*Id.*  The order also stated, in relevant part:

> Respondent assures the court that he will continue to pay the monthly
> mortgage payment on the marital property of $1,300 per month and
> the monthly utilities on the property of approximately $600 per

---

[5] Appellee Jon Waage has  informed the Court that he does not intend to participate in the appeal.  Dkt. 22.

month.  The temporary support ordered herein is contingent upon
Respondent continuing to make the payments stated above.

*Id.*  The parties appear to agree that Mr. Ford's required monthly payment was later reduced from $300 to $200.  Dkt. 27-4 at 2; Dkt. 25 at 6.

Mr. Ford and his now-former wife were also parties to a divorce proceeding. In 2014, the state family court entered a final judgment of dissolution of marriage. Dkt. 27-6 at 5-19.  That order noted that Mr. Ford has previously been ordered to "pay temporary child support in the amount of $200.00."  *Id.* at 6.  It also noted that the parties were "currently subject to a proceeding brought by the Department of Revenue on behalf of" Mr. Ford's now-former wife and that the "matter of child support for the Minor Children shall continue to be determined in that proceeding until ordered otherwise."  *Id.* at 14.  The order also provided:

> The Husband shall pay durational alimony to the Wife in the amount
> of $1,500.00 per month for a period of ten (10) years effective
> November 12, 2014 . . . .  Support shall be paid through the State of
> Florida Disbursement Unit (hereinafter SDU), P.O. Box 8500 . . . . ,
> Tallahassee, FL 32314-8500.  The Husband shall also pay the Clerk's
> fee of an amount no greater than $5.25 per payment . . . .  [T]he Wife
> is awarded exclusive use and occupancy [of the Marital Home] . . . .
> While she is in possession of the Marital Home . . . the Wife shall be
> responsible for payment of the mortgage, taxes, insurance and
> repairs/maintenance that do not exceed $500.00.

*Id.* at 15; Dkt. 27-7 at 15.[6]  The interplay between these orders is the basis for the matter currently before the Court.  As Mr. Ford eventually conceded in the

---

[6] There are two copies of this order in the record, each with different redactions.

bankruptcy proceeding, there are "two conflicting [state court] Final Judgments, one of which expressly authorizes him to make in-kind payments as a domestic support obligation" (Dkt. 12-7 at 14) and one which does not.

B.     Bankruptcy Proceedings

Mr. Ford filed for Chapter 13 bankruptcy in 2016.  Dkt. 27-1 at 1-2.  The DOR filed a proof of claim identifying an obligation of $32,701.00 in unpaid domestic support obligations.  Dkt. 27-6.[7]  In the DOR's view, the state court orders required Mr. Ford to: (1) pay child support of $200 per month; (2) pay the mortgage ($1300) and utilities (estimated by the state court at $600 per month) on the marital property; and (3) pay $1500 per month in alimony.  That is, the DOR posited a total monthly obligation of $1700 plus mortgage and utilities.  *See, e.g.*, Dkt. 12-18 at 11-12.  Although Mr. Ford paid the $200 monthly child support payment, he had not been paying the $1500 monthly alimony payment, thereby resulting in a significant arrearage.  *See* Dkt. 27-7 at 7-10.

Mr. Ford objected, arguing that his continued payment of the $1300 monthly mortgage payment for the marital home and approximately $400 per month in utilities for the marital home satisfied his $1500 per month alimony obligation.

---

[7] The claim states that it is for unpaid child support, Dkt. 27-6 at 2, but the parties appear to agree that the claim was for unpaid alimony.  *See* Dkt. 25 at 7 ("Florida filed Proof of Claim #2 in the case identifying an obligation for the unpaid alimony obligation."); Dkt. 18 at 7-8 ("The Florida Department of Revenue filed its Proof of Claim #2 . . . for alimony arrearages.")

Dkt. 27-2. That is, he posited a total monthly obligation of $200 per month, plus the mortgage and utility payments on the marital property. *See, e.g.*, Dkt. 27-2 at 4-5.[8]

On March 30, 2017, the bankruptcy court entered an order on Mr. Ford's objection, concluding:

> The Objection asserts that the debt claimed by DOR has been fully satisfied. At the hearing, DOR agreed that the Debtor should be entitled to credit for having made past mortgage and utility payments and that DOR's claim would be reduced to reflect such credit, the exact amount of which will be determined in state court . . . . [T]he Court finds that beginning November 10, 2014, the Debtor's monthly support [obligation] is $1,700/month, which includes $1,500/month for alimony and $200/month for child support. Accordingly, it is ORDERED:
>
> > 1. The Debtor is entitled to a credit of up to $1,700/month for actual support payments made by the Debtor, including mortgage and utility payments ("Support Payments), between November 10, 2014, and the petition date.
> >
> > 2. The parties shall return to state court where the Debtor may:
> >
> > > a. Request a change in the method of Support Payments;
> > >
> > > b. Obtain a determination as to the exact amount of the credit to which the Debtor is entitled for the time period of November 10, 2014, through the petition date, as described in decretal paragraph 1 above; and
> > >
> > > c. If the state court finds that the amount of Support Payments made by the Debtor beginning November

---

[8] Mr. Ford claimed that the "Final Judgment specifically states that the $1,500.00 alimony award includes the $1,300.00 mortgage payment." Dkt. 27-2 at 5. The Court has been unable to locate any such specific text, and Mr. Ford did not provide a citation to any such language.

> 10, 2014, exceeded his monthly support obligation,
> obtain a determination as to whether the amount of
> such excess may be used to offset future payments.

> 3. The Court confirms that no automatic stay prevents the
>    parties' litigation and negotiation regarding support payment
>    adjustments such as those described above.  Alternatively, if
>    the automatic stay applies, the stay is modified to allow for
>    such litigation and negotiation.

> 4. The Court defers a final ruling on the Objection until the
>    credit or offset amounts described herein are determined in
>    state court.

Dkt. 12-5 at 1-2.  Mr. Ford did not make any further filings in the bankruptcy court until May 22, 2017, when he filed a status report.  Dkt. 27-1 at 13.

On August 9, 2017, the bankruptcy court held a confirmation hearing.  Dkt. 12-6.  The bankruptcy court continued the confirmation hearing so that the parties could either agree on the amount of alimony (if any) owed by Mr. Ford or return to state court to obtain a ruling as to the amount owed.  *Id.*; *see also* Dkt. 27-1 at 14-15.  On August 20, 2017,[9] Mr. Ford filed a motion titled "Motion to Vacate Orders (Doc. #47 and 54); and Motion for Order of Disallowance of Florida Department of Revenue's Claim #2" ("Motion to Vacate") pursuant to Federal Rule of

---

[9] On August 11, 2017, Mr. Ford also filed a motion for reconsideration of certain statements made at the August 9 confirmation hearing, including the bankruptcy court's reiteration of the parties' need to go back to state court.  Bk. Dkt. 81.  The bankruptcy court denied that motion on October 18, 2017.  Bk. Dkt. 101.  Mr. Ford appealed that ruling on November 2, 2017.  Bk. Dkt. 112.  On April 19, 2018, this Court dismissed that appeal without prejudice after Mr. Ford filed a notice of voluntary dismissal.  Bk. Dkt. 140.

Bankruptcy Procedure ("Bankruptcy Rule") 9024. Bk. Dkt. 85.[10] In that motion, Mr. Ford asked the Court to vacate the Court's oral decision to defer to the state court, which was made during a hearing on February 13, 2017, reflected in a hearing proceeding memo docketed as Docket Number 47 in the bankruptcy case, and ultimately embodied in the March 30 Order. He also asked the Court to vacate its March 3, 2017 order granting a motion to correct a scrivener's error in the docket entry describing Docket Number 47, apparently because that order also mentioned the need for the parties to go back to state court.

On October 4, 2017, the bankruptcy court held a hearing on the Motion to Vacate in which it further explained its reasons for sending the parties back to state court but ultimately deferred ruling on the Motion to Vacate. Dkt. 12-18; Bk. Dkt. 122. On October 11, 2017, Mr. Ford filed a motion titled "Motion for Reconsideration" in which he asked the Court to reconsider "its orders of October 4, 2017"—apparently referring to the October 4 hearing. Dkts. 12-7 through 12-10. On October 19, 2017, Mr. Ford filed another "Motion for Reconsideration"

---

[10] Although the Motion to Vacate was the subject of one of the orders on which the bankruptcy court ruled in the July 19 Order, it was not filed as part of the record in this Court's docket. Thus, the Court cites to the bankruptcy court docket. The Court may take notice of this document and other documents filed in the bankruptcy case but not submitted to this Court as part of the bankruptcy record. *See, e.g.*, *Bobadilla v. Aurora Loan Servs., LLC*, 478 F. App'x 625, 627 (11th Cir. 2012) (internal quotation and citation omitted) (rejecting challenge to magistrate judge's decision to take judicial notice of documents filed in bankruptcy proceeding and noting that "a court may take judicial notice of its own records and the records of inferior courts.").

that is largely identical to the motion he filed on October 11.  Dkts. 12-16 through

12-17.  (Collectively, these two motions for reconsideration are referred to as the

"Motions for Reconsideration.") Finally, on December 4, 2017, Mr. Ford filed a

motion asking the bankruptcy court to docket an order denying the Motion to

Vacate, reflecting his apparent belief that the bankruptcy court had denied the

Motion to Vacate at the October 4 hearing.  Bk. Dkt. 120 ("Motion to Docket

Order").  After the original bankruptcy judge recused herself from the case, the

newly-assigned bankruptcy judge held a hearing on the Motion to Vacate, the

Motions for Reconsideration, and the Motion to Docket Order.  Bk. Dkt. 141.  She

allowed Mr. Ford to submit a supplemental memorandum on the applicability of

two Eleventh Circuit cases—*In re Diaz*, 647 F.3d 1073 (11th Cir. 2011), and *In re

Davis*, 481 F. App'x 492 (11th Cir. 2012).  Bk. Dkt. 142.

On July 19, 2018, the bankruptcy court entered a written order denying the

Motion to Vacate, denying the Motions for Reconsideration, and granting the

Motion to Docket Order to the limited extent that the bankruptcy court ruled on the

motion that was the subject of Mr. Ford's request.  Dkt. 12-2.  As to the Motion to

Vacate, the bankruptcy court noted that Mr. Ford did "not identify the grounds for

relief under [Federal Rule of Civil Procedure] 60(b) [which governs a motion to

vacate under Bankruptcy Rule 9024]" and assumed that he was invoking Rule

60(b)(6), which authorizes release from an order for "any other reason that justifies

relief." *Id.* at 2. The bankruptcy court concluded that Mr. Ford had not

demonstrated the required "exceptional circumstances" to warrant relief on this

ground:

> Mr. Ford asserts simply that upon reflection, he believes the court
> misapplied the law. Although a basis for an appeal, it is not a proper
> basis for a Rule 60(b)(6) motion. Such motions may not serve as a
> substitute for a timely and proper appeal. Accordingly, the Motion to
> Vacate must be denied.

*Id.* (internal quotations, footnotes, and citations omitted). The Court also construed

the Motions for Reconsideration as motions under Bankruptcy Rule 9023, which

incorporates Federal Rule of Civil Procedure 59. Under this standard, the

bankruptcy court found the Motions for Reconsideration lacking:

> Neither reconsideration motion articulates a proper basis for relief
> under Rule 59. Mr. Ford cites no change in controlling law or
> presents new evidence. Although Mr. Ford might claim the court
> committed "clear error," a review of the motions indicates that Mr.
> Ford, dissatisfied with the court's rulings, seeks to relitigate the issues
> and to offer new arguments not previously presented. For this reason
> alone, both motions must be denied.

*Id.* at 3 (internal footnote omitted).

Finally, the bankruptcy court offered some general comments on its decision

to send the parties back to state court:

> The Eleventh Circuit's direction on these matters is clear. First, as a
> general [principle], a bankruptcy court should refrain from involving
> itself in family law matters. Second, and more importantly, any
> determination by a bankruptcy court as to the allowance or
> disallowance of claim for a domestic support obligation is not binding
> upon the state court in determining whether a debtor has fulfilled his

support obligation under state law or in determining the total amount of the debt owed including sums that may have accrued before the bankruptcy. Simply put, this court cannot do the math. The bankruptcy court is without proper authority to determine the total amount of the domestic support obligation from which it might subtract the credits claimed by Mr. Ford.

*Id.* at 5 (internal footnote and citation omitted).

On July 25, 2018, Mr. Ford filed a motion pursuant to Bankruptcy Rule 9024 asking the bankruptcy court to open, modify, and vacate the July 19 Order. Dkt. 12-20. On August 3, 2018, Mr. Ford filed a notice of appeal from the July 19 Order in the bankruptcy court. Dkt. 12-1; Dkt. 27-1 at 29. On August 23, 2018, the bankruptcy court denied the July 25 Bankruptcy Rule 9024 motion without prejudice, noting that Mr. Ford had indicated that the "issues raised in the Motion could and might be best addressed on appeal." Dkt. 12-21.

As mentioned previously, Mr. Ford's notice of appeal identified the "Order being appealed" as "Order #85, to wit: Motion to Vacate Modify, and Reinstate Orders on Debtor's Objection to Florida Department of Revenue's Claims #2 and Motion for Disallowance of Claim #2, pursuant to Section 11 U.S.C. Sections 501-502, 553 (Civil Rights)[.] The said order on motion (#85) has been docketed on July 19, 2018." Dkt. 1 at 2. From this description, it appeared that Mr. Ford was appealing only the bankruptcy court's ruling on the Motion to Vacate, which was docketed as Docket Number 85 in the bankruptcy case—that is, that he was appealing only the July 19 Order.

His amended appellate brief, however, suggested that he was also attempting to appeal the March 30 Order. *See, e.g.*, Dkt. 18 at 6 (identifying the "orders being appealed" as "Order On Debtor's Objection to Claim (3/30/17; 1-Doc. #65) and Order Denying Motion to Vacate (07/19/18; 1-Doc. #151)." Because of this discrepancy, the Court entered an Order to Show Cause and required Mr. Ford to clarify whether he was appealing both the March 30 Order and the July 19 Order and, if so, to show cause why the Court should not dismiss the appeal of the March 30 Order for lack of subject matter jurisdiction. Dkt. 28. Mr. Ford responded, confirming that he was appealing the March 30 Order and arguing that the Court has subject matter jurisdiction over his appeal of that order. Dkt. 31. The DOR filed a reply and argued that the appeal of the March 30 Order should be dismissed because it was untimely, thereby depriving this Court of subject matter jurisdiction. Dkt. 32. Thus, Mr. Ford's appeal is now ripe for review.

## II.    STANDARD OF REVIEW

In reviewing a bankruptcy court decision, a district court "functions as an appellate court." *In re Immenhausen Corp.*, 159 B.R. 45, 47 (M.D. Fla. 1993) (citations omitted). A district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law de novo. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990) (citations omitted). The court reviews the denial of motions under Bankruptcy Rules 9023 and 9024(b) for abuse of discretion. *In re*

*Smith*, 541 B.R. 914, 916 & n.15 (Bankr. M.D. Fla. 2015) (citations omitted)

(Bankruptcy Rule 9023); *In re Farris*, 330 F. App'x 833, 835 (11th Cir. 2009)

(citation omitted) (Bankruptcy Rule 9024(b)).[11]  An abstention decision is also

reviewed for abuse of discretion.  *In re Mack*, No. 6:06-cv-1782-Orl-19, 2007 WL

1222575, at *2 (M.D. Fla. Apr. 24, 2007) (citation omitted) ("The bankruptcy

court's decision to abstain under 28 U.S.C. § 1334(c)(1) is . . . appealable and can

be reviewed for an abuse of discretion."); *Quackenbush v. Allstate Ins. Co.*, 517

U.S. 706, 713 (1996) (citations omitted) (abstention-based stay order based on the

*Colorado River* doctrine is an appealable final order).[12]

## III.  DISCUSSION

### A.  A Preliminary Note About Appellate Jurisdiction

This Court has jurisdiction to hear appeals from "final judgments, orders,

and decrees" of the bankruptcy court.  28 U.S.C. § 158(a)(1).  Reduced to its

essence, the dispute in this case relates to the bankruptcy court's decision to send

the parties to state court to determine the total amount of the domestic support

obligation Mr. Ford owes under Florida law before ruling on Mr. Ford's objection

to the DOR's proof of claim and confirming Mr. Ford's Chapter 13 bankruptcy

---

[11] In this Order, unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

[12] As discussed in footnote 13, *infra*, the parties identify at least two possible bases for the bankruptcy court's decision to abstain: 28 U.S.C. § 1334(c) and the *Colorado River* doctrine. The distinction between the two is not relevant here because both types of abstention are reviewed for abuse of discretion.

plan. The parties agree that the Court should view this decision as an abstention decision. Dkt. 25 at 5 ("[T]he court 'abstained' from determining any issues relating to the [domestic support obligation]. It is solely the issue of abstention that is before this Court."); Dkt. 18 at 10 ("A federal order to abstain, or not abstain, is a 'final order' for purposes of appellate review."). Such a decision is an appealable order. *In re Mack*, , 2007 WL 1222575, at *2 (citation omitted) (abstention under 28 U.S.C. § 1334(c)(1)); *Quackenbush*, 517 U.S. at 713 (citations omitted) (abstention-based stay order based on the *Colorado River* doctrine).[13]

B.     The Court Lacks Subject Matter Jurisdiction Over the Appeal of the March 30 Order Because It Was Not Timely Filed.

The Court concludes that Mr. Ford's appeal of the March 30 Order was not timely filed. Thus, the Court lacks subject matter jurisdiction over the appeal of that order, and it must be dismissed.

---

[13] The DOR characterizes the issue as one involving abstention under 28 U.S.C. § 1334. Dkt. 25 at 5 (citing § 1334(d) regarding appeal from an order to abstain). In his statement of the issues presented on appeal and elsewhere in his appeal papers, Mr. Ford also appears to characterize the bankruptcy court's decision to abstain as of abstention under 28 U.S.C. § 1334(c). *See, e.g.*, Dkt. 18 at 6 ("Whether the Bankruptcy Court abused its discretion and violated 28 U.S.C. § 1334(c)(1,2) . . . ."), 10 (stating that a federal order to abstain is a final order for purposes of appellate review and citing *In re Holtzclaw*, 131 B.R. 162 (E.D. Cal. 1991), a case that involved abstention under § 1334). However, Mr. Ford devotes a significant portion of his appellate papers to arguing that the bankruptcy court did not meet the factors for abstention under the *Colorado River* doctrine. *See, e.g., id.* at 26-29. The distinction between the two types of abstention is not relevant here because both types result in a final appealable order. *See In re Mack*, 2007 WL 1222535, at *2; *Quackenbush*, 517 U.S. at 713.

As previously explained in the Court's Order to Show Cause, under Bankruptcy Rule 8002(a)(1), Mr. Ford was required to file an appeal of the March 30 Order with the bankruptcy court within 14 days of its entry—that is, no later than April 13, 2017. That deadline could have been tolled if Mr. Ford had filed one of the motions listed in Bankruptcy Rule 8002(b)(1), but he did not do so in time to toll the appeal deadline.[14]

Mr. Ford did file the Motion to Vacate—which was a Bankruptcy Rule 9024 motion (which is equivalent to a motion under Federal Rule of Civil Procedure 60)—in August 2017. Bk. Dkt. 85. He also filed the Motions for Reconsideration—which the bankruptcy court considered to be Bankruptcy Rule 9023 motions (equivalent to motions under Federal Rule of Civil Procedure 59)— in October 2017. Dkts. 12-7 through 12-10; 12-16 through 12-17. Those motions do not appear to explicitly mention the March 30 Order. And, even if they did, untimely motions under Bankruptcy Rules 9023 and 9024 do not generally revive the time to appeal the underlying order. *See Nat'l Capital Mgmt., LLC v. Herman*,

---

[14] As relevant to this case, Bankruptcy Rule 8002(b)(1) allows the time for appeal to be tolled if a party files a motion to alter or amend judgment under Bankruptcy Rule 9023. There is a 14-day deadline to file such a motion. Fed. R. Bankr. P. 9023. Mr. Ford did not file a Bankruptcy Rule 9023 motion directed to the March 30 order by the April 13 deadline. Bankruptcy Rule 8002(b)(1) also allows the time for appeal to be tolled if a party files a motion for relief under Bankruptcy Rule 9024 "within 14 days after the judgment is entered." Again, Mr. Ford did not file a Bankruptcy Rule 9024 motion within 14 days of March 30. Indeed, the bankruptcy court docket sheet shows that Mr. Ford did not file anything at all between March 30 and April 13, 2017. Dkt. 27-1 at 13.

No. 6:11-cv-9-Orl-28, 2011 WL 4531736, at *3 (M.D. Fla. Sept. 29, 2011)

(untimely motion for reconsideration of bankruptcy court order does not toll time

to appeal to district court); *cf. Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d

1322, 1323 (11th Cir. 1996) (interpreting language parallel to Bankruptcy Rule

8002 in Fed. R. App. P. 4 and concluding that "[u]ntimely motions under Rules 59

and 60 [do] not toll the time for filing an appeal").

Thus, Mr. Ford's deadline to appeal the March 30 order was April 13, 2017.

He did not do so by that date. Accordingly, his appeal of the March 30 order is

untimely and this Court lacks jurisdiction to hear it. *In re Williams,* 216 F.3d 1295,

1298 (11th Cir. 2000) (district court lacked jurisdiction to hear untimely appeal of

bankruptcy court orders).

Mr. Ford's arguments to the contrary do not change this conclusion. First,

Mr. Ford cites *Browder v. Director, Department of Correction of Illinois*, 434 U.S.

257, 263 n.7 (1978), for the proposition that "the U.S. District Court retains subject

matter jurisdiction to review the challenged order under an 'abuse of discretion'

standard of appellate review" even if the "motion for relief pursuant to Rule 9024

is not filed within the 14-day time period to file an appeal." Dkt. 31 at 1-2.

*Browder* does not stand for this proposition. Instead, *Browder* states (in a

footnote), that "[a] timely appeal may be taken under Fed. Rule App. Proc. 4(a)

from a ruling on a Rule 60(b) motion. The Court of Appeals may review the ruling

only for abuse of discretion, however, and an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Id.* Thus, *Browder* stands only for the unremarkable proposition that a timely appeal of a Rule 60 motion (which is analogous to a motion under Bankruptcy Rule 9024) allows an appellate court to review the denial of the Rule 60 motion for abuse of discretion. Here, the Court has never questioned that it has jurisdiction to review the July 19 Order (which considered Mr. Ford's Motion to Vacate). It has questioned whether it may review the March 30 Order. As noted above, it is not apparent that Mr. Ford did, in fact, ask the bankruptcy court to vacate the March 30 Order when he filed his Motion to Vacate and his Motions for Reconsideration. But even if he did, the plain terms of *Browder* provide that an appeal of a court's denial of such a motion does not bring "the underlying judgment"—in this case, the March 30 Order—up for review.

Mr. Ford also suggests that the distinction between review of the bankruptcy court's denial of his Bankruptcy Rule 9024 motion (that is, the July 19 Order) and review of the March 30 Order is one without a difference. Dkt. 31 at 5-8. This is so, he argues, because both orders are reviewed under an abuse of discretion standard. *Id.* This argument also misses the mark because the content of the underlying decisions is different. If it were to review the March 30 Order, this Court would be required to determine whether the bankruptcy court abused its

16

discretion when it abstained from deciding the exact amount of Mr. Ford's

domestic support obligations and instead deferred to the state court. Its review of

the July 19 Order asks a separate question—namely, whether the bankruptcy court

abused its discretion when it denied Mr. Ford's Motion to Vacate.[15] The two

inquiries are not the same. *See* Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ.

P. 60); Fed. R. Civ. P. 60(b) (setting forth circumstances under which a court may

relieve a party from a final judgment, order, or proceeding).[16]

Finally, Mr. Ford argues that, even if he did not timely appeal the March 30

Order, the "totality of the circumstances" supports "equitable tolling" of the filing

deadline. Dkt. 31 at 8-10. But the 14-day time to file an appeal from a bankruptcy

court order is jurisdictional, *see In re Williams,* 216 F.3d at 1298, and there are no

equitable exceptions to such jurisdictional requirements, *see In re Sobczak-*

---

[15] The July 19 Order denied both the Motion to Vacate and the Motions for
Reconsideration. Mr. Ford's notice of appeal and his response to the Order to Show Cause
appear to focus on the denial of the Motion to Vacate (*see* Dkt. 1; *see also* Dkt. 31 at 5-8
(discussing only the standard of review for denial of a Bankruptcy Rule 9024 motion, not a
Bankruptcy Rule 9023 motion)), even though the July 19 Order also denied the Motions for
Reconsideration. If Mr. Ford is also appealing from the denial of the Motions for
Reconsideration, the Court notes that the bankruptcy court construed those motions as
Bankruptcy Rule 9023 motions, which are equivalent to Federal Rule of Civil Procedure 59
motions, and Mr. Ford has not objected to that characterization. Denials of such motions are also
reviewed under the abuse of discretion standard. *See Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46
(11th Cir. 1997) (using abuse of discretion standard to decide appeal of a Rule 59 motion).

[16] To the extent Mr. Ford is also appealing the denial of the Motions for
Reconsideration—which the bankruptcy court construed as Bankruptcy Rule 9023 motions—the
same is also true. *See* Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59); Fed. R. Civ. P.
59; *Mays,* 122 F.3d at 46 ("[A] motion to reconsider should not be used by the parties to set
forth new theories of law."); *Lamar Advert. of Mobile, Inc. v. City of Lakeland,* 189 F.R.D. 480,
489 (M.D. Fla. 1999) (setting forth circumstances that justify reconsideration of an order).

*Slomczewski*, 826 F.3d 429, 432 (7th Cir. 2016) (citation omitted) (no equitable exceptions to Bankruptcy Rule 8002's 14-day time to appeal from bankruptcy court order); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) (the court has "no authority to create equitable exceptions to jurisdictional requirements").[17]

Accordingly, the Court concludes that Mr. Ford did not timely appeal the March 30 Order and that his appeal of that order must be dismissed for lack of subject matter jurisdiction. *See In re Williams*, 216 F.3d at 1298 (affirming dismissal of bankruptcy appeal for lack of subject matter jurisdiction because the appeal was not timely filed).

### C. The Bankruptcy Court Did Not Abuse Its Discretion in Denying Mr. Ford's Motion to Vacate.

Properly considered then, this appeal is an appeal only of the July 19 Order denying Mr. Ford's Motion to Vacate, which was filed pursuant to Bankruptcy Rule 9024, which incorporates Federal Rule of Civil Procedure 60.[18] As noted

---

[17] It is true that Bankruptcy Rule 8002(d) provides that the bankruptcy court may extend the time to file a notice of appeal upon a party's motion within the 14-day appeal window or within 21 days after that time if the party shows excusable neglect. But Mr. Ford never filed a motion to extend the time to file a notice of appeal with the bankruptcy court (and certainly did not file one within the 35-day outer limit of that rule), and, in any event, it is not appropriate to treat a late notice of appeal as a motion for extension of time due to excusable neglect. *In re Williams*, 216 F.3d at 1297-98.

[18] Unlike the appeal of the March 30 Order, the appeal of the July 19 Order is timely. Mr. Ford filed a Bankruptcy Rule 9024 motion directed to the July 19 Order six days after it was entered (on July 25, 2018), tolling the time to appeal. Fed. R. Bankr. P. 8002(b)(1). His August 3, 2018 notice of appeal was not immediately effective because the July 25 Bankruptcy Rule 9024 motion was still pending when the notice of appeal was filed. Fed. R. Bankr. P. 8002(b)(2). The notice of appeal became effective when the bankruptcy court denied the July 25 Bankruptcy Rule 9024 motion. *Id.*

above, the denial of a Rule 60 motion is reviewed on appeal for abuse of discretion.  An abuse of discretion occurs when a court "uses an incorrect legal standard, applies the law in an unreasonable or incorrect manner, misconstrues its proper role, follows improper procedures in making a determination, or makes clearly erroneous findings of fact."  *In re Bagwell*, 741 F. App'x 755, 758 (11th Cir. 2018) (citation omitted).

As the bankruptcy court pointed out in the July 19 Order, Mr. Ford's Motion to Vacate did not identify the grounds for relief under Federal Rule of Civil Procedure 60(b).  Dkt. 12-2 at 2.  His appeal papers suffer from a similar defect— they wholly ignore the standards of Rule 60(b) applied by the bankruptcy court in the July 19 Order and instead focus on the bankruptcy court's initial decision to abstain as embodied in the March 30 Order.  But, as noted above, the appeal of a denial of a Rule 60(b) motion does not "bring up the underlying judgment for review."  *Browder*, 434 U.S. at 263 n.7.  In the absence of any argument about Rule 60's standards, the bankruptcy court's July 19 Order is due to be affirmed.[19]

---

[19] Again, to the extent Mr. Ford is also appealing the bankruptcy court's denial of the Motions for Reconsideration, the same conclusion applies.  The bankruptcy court construed the Motions for Reconsideration as Bankruptcy Rule 9023 motions, which incorporates Federal Rule of Civil Procedure 59.  Mr. Ford's appeal papers are, however, completely silent as to the standard governing a Rule 59 motion and how the bankruptcy court might have abused its discretion in applying that standard.  Instead, he focuses on the underlying decision to abstain, thereby waiving any arguments under Rule 59.  Moreover, even if Mr. Ford had not waived any argument under Rule 59, the bankruptcy court did not abuse its discretion in denying the Motions for Reconsideration.  Instead, the Court agrees with the bankruptcy court's assessment of the Motions for Reconsideration: "Neither reconsideration motion articulates a proper basis for relief

And even if Mr. Ford had made some argument under Rule 60, the Court finds no abuse of discretion in the bankruptcy court's denial of the Motion to Vacate. As the bankruptcy court noted, it appears that only Rule 60(b)(6) is potentially applicable to this case. And, on that point, the Court agrees with the bankruptcy court's assessment of this case: "Mr. Ford asserts simply that upon reflection, he believes the court misapplied the law. Although a basis for an appeal, it is not a proper basis for a Rule 60(b)(6) motion. Such motions may not serve 'as a substitute for a timely and proper appeal.'" Dkt. 12-2 at 2 (internal footnote omitted) (quoting *Paul v. William Morrow & Co.*, 380 F. App'x 957, 958-59 (11th Cir. 2010)).[20]

Finally, the Court notes that, even if the ultimate propriety of the bankruptcy court's decision to send the parties back to state court to determine Mr. Ford's domestic support obligation were properly before the Court, the Court would

---

under Rule 59. Mr. Ford cites no change in controlling law or presents new evidence. Although Mr. Ford might claim the court committed 'clear error,' a review of the motions indicates that Mr. Ford, dissatisfied with [the] court's rulings, seeks to relitigate the issues and to offer new arguments not previously presented. For this reason alone, both motions must be denied." Dkt. 12-2 at 3.

[20] The Court also agrees with the bankruptcy court that Mr. Ford's argument that his constitutional rights had been violated was wholly conclusory. Dkt. 12-2 at 2 n.4. Mr. Ford mentioned the First Amendment's right of access to the courts and the Thirteenth Amendment in the Motion to Vacate, and he also accused the DOR of violating 42 U.S.C. § 1983 (*see, e.g.*, Bk. Dkt. 85 at 1-2), but he did not develop his constitutional arguments. Instead, he relied on conclusory assertions that his rights have been violated. *See, e.g.*, *id*, at 10.

affirm the bankruptcy court.[21]  As mentioned above, the issue here is whether the bankruptcy court abused its discretion.

The Court has reviewed the bankruptcy record and Mr. Ford's appeal papers, and it has considered the various arguments Mr. Ford makes in those papers.  This case involves unique factual circumstances because the bankruptcy court was presented with state family court orders that are at best unclear and at worst conflicting with respect to the total amount of Mr. Ford's domestic support obligation.  Any attempt by the bankruptcy court to sort out the confusion was limited by Eleventh Circuit caselaw, which provides that—for non-dischargeable debts like domestic support obligations—the bankruptcy court decides only the amount of the obligation, if any, payable under a bankruptcy plan, not the actual amount of the obligation, which is left to the state courts to determine.  *See In re Diaz*, 647 F.3d at 1088-93 & n.16 ("If bankruptcy courts could fix a debtor's personal liability for child-support through rulings on a claim objection or confirmation of a Chapter 13 plan, this would often result in a de facto modification of state child-support orders.  Federal bankruptcy courts have no

---

[21] In places, Mr. Ford also objects to the "bankruptcy court's order lifting the automatic stay," apparently referring to the March 30 Order.  *See, e.g.*, Dkt. 18 at 14.  But the relevant part of the March 30 Order reads as follows: "The Court confirms that no automatic stay prevents the parties' litigation and negotiation regarding support payment adjustments such as those described above.  Alternatively, if the automatic stay applies, the stay is modified to allow for such litigation and negotiation."  Dkt. 12-5 at 2.  Mr. Ford has challenged only the alternative conclusion and has not challenged the primary conclusion that the automatic stay does not apply.  Thus, this assignment of error is unavailing.

business becoming embroiled in domestic relations to such a degree."); *In re Davis*, 481 F. App'x at 494-96 & n.2. On this record, the Court cannot find that the bankruptcy court abused its discretion in its handling of this case. Instead, the Court agrees with the bankruptcy court's assessment of this case: "Simply put, this court cannot do the math. The bankruptcy court is without proper authority to determine the total amounts of the domestic support obligation from which it might subtract the credits claimed by Mr. Ford." Dkt. 12-2.

## IV.  CONCLUSION

For the reasons discussed above, Mr. Ford's appeal of the March 30 Order is dismissed for lack of subject matter jurisdiction. The Court also affirms the bankruptcy court's decision as to the July 19 Order. The Clerk is directed to close the case and to transmit a copy of this order to the Clerk of the United States Bankruptcy Court for the Middle District of Florida.

**DONE** and **ORDERED** in Tampa, Florida on May 8, 2019.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


<u>**COPIES FURNISHED TO:**</u>
Counsel of Record
Appellant, pro se